# United States Court of Appeals
# for the Federal Circuit

**REALTIME ADAPTIVE STREAMING LLC,**
*Plaintiff-Appellant,*

*v.*

**SLING TV, L.L.C., SLING MEDIA, L.L.C.,
DISH NETWORK L.L.C., DISH TECHNOLOGIES L.L.C.,**
*Defendants-Appellees*

**SLING MEDIA, INC., ECHOSTAR TECHNOLOGIES LLC,**
*Defendants*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
COLORADO IN CASE NO. 1:17-CV-02097-RBJ, JUDGE R. BROOKE JACKSON

## APPELLEES' RESPONSE BRIEF

Ruffin B. Cordell
Adam R. Shartzer
Brian J. Livedalen
Michael J. Ballanco
FISH & RICHARDSON P.C.
1000 Maine Ave., Suite 1000
Washington, DC 20024
Tel: (202) 783-5070

May 31, 2023                    *Attorneys for Appellees*

# PATENT CLAIM AT ISSUE

U.S. Patent 8,867,610

1. A method, comprising:

determining, a parameter or an attribute of at least a portion of a data block having video or audio data;

selecting one or more compression algorithms from among a plurality of compression algorithms to apply to the at least the portion of the data block based upon the determined parameter or attribute and a throughput of a communication channel, at least one of the plurality of compression algorithms being asymmetric; and

compressing the at least the portion of the data block with the selected compression algorithm after selecting the one or more, compression algorithms.

Appx69 at cl. 1.

# CERTIFICATE OF INTEREST

Counsel for Defendant-Appellees DISH Network L.L.C., DISH Technologies L.L.C., Sling Media L.L.C., Sling TV L.L.C. (collectively, "DISH") certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case: DISH Network L.L.C., DISH Technologies L.L.C., Sling Media L.L.C., Sling TV L.L.C.

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities, and not identified in response to Question 3:    None.

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock in the entities:

| DISH Network L.L.C. | - DISH DBS Corporation<br>- DISH Orbital Corporation<br>- DISH Network Corporation |
|---|---|
| DISH Technologies L.L.C. | - DISH Technologies Holding Corporation<br>- DISH Network L.L.C.<br>- DISH DBS Corporation<br>- DISH Orbital Corporation<br>- DISH Network Corporation |
| Sling Media L.L.C. | - DISH Technologies L.L.C.<br>- DISH Technologies Holding Corporation<br>- DISH Network L.L.C.<br>- DISH DBS Corporation<br>- DISH Orbital Corporation<br>- DISH Network Corporation |

| Sling TV L.L.C. | - Sling TV Holding L.L.C. |
|---|---|
| | - DISH Technologies L.L.C. |
| | - DISH Technologies Holding Corporation |
| | - DISH Network L.L.C. |
| | - DISH DBS Corporation |
| | - DISH Orbital Corporation |
| | - DISH Network Corporation |

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court (and who have not or will not enter an appearance in this case) are:

    Fish & Richardson P.C.: Timothy W. Riffe, Daniel Tishman, Matthew Mosteller, Caitlin M. Dean, Michael R. Ellis, Min Woo Park, Raj Utreja, Ryan M. Teel, Andrew L. Schrader.
    Wheeler, Trigg, O'Donnell: Hugh Q. Gottshalk

5.  Other than the originating case(s) for this case, are there any related or prior cases that meet the criteria under Fed. Cir. 47.5(a)?

    Yes.

6.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

    Not Applicable

Dated:  May 31, 2023                    */s/ Ruffin B. Cordell*
                                        Ruffin B. Cordell

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ......................................................................... ii

TABLE OF AUTHORITIES ............................................................................. vi

STATEMENT OF RELATED CASES ............................................................ 1

COUNTER-STATEMENT OF THE ISSUES ................................................. 2

INTRODUCTION ............................................................................................. 3

COUNTER-STATEMENT OF THE CASE AND FACTS ........................... 4

I.      The '610 Patent Covers the Non-statutory Concept of Selecting a
Compression Scheme ........................................................................... 4

II.     Invalidation of Challenged Claims of the Asserted Patents at the
Patent Office .......................................................................................... 5

       A.     IPRs of the '610 & '535 Patents ..................................................... 5

       B.     Final Rejection of '610 Patent Entered in *Ex Parte*
Reexamination ............................................................................... 6

III.    Section 101 Ineligibility Findings of Asserted Patents ........................... 6

       A.     DISH's § 101 Motion on the Pleadings ........................................ 6

       B.     Other Courts Find the '535 Patent Ineligible and Enter
Fees Against Realtime ..................................................................... 7

       C.     The District Court Enters Summary Judgment of '610
Patent Ineligibility, and This Court Affirms ................................. 9

IV.    Section 285 Exceptional Case Finding Leads to Fees Award
Against Realtime ....................................................................................... 11

SUMMARY OF THE ARGUMENT ................................................................ 13

ARGUMENT ...................................................................................................... 14

I.      Standard of Review ................................................................................... 14

II.    The '610 Patent Was Clearly Patent Ineligible ...................................... 15

       A.    The '610 Patent Inarguably Failed *Alice* Step One Because
             It Is Manifestly Directed to an Abstract Idea ............................. 15

       B.    Realtime Could Not Save the '610 Patent at *Alice* Step Two ... 19

III.   The District Court Did Not Abuse Its Discretion in Finding This
       Case Exceptional ...................................................................................... 22

       A.    Assertion of a Clearly Ineligible Patent Is Grounds for an
             Exceptionality Finding ................................................................ 22

       B.    The District Court's "Red Flag" Analysis Presents Specific
             Factual Findings Supporting the Exceptionality
             Determination .............................................................................. 26

IV.    Realtime's Arguments Do Not Establish That Its Eligibility
       Position Had Objective Merit .................................................................. 44

       A.    The District Court's Denial Without Prejudice of DISH's
             Rule 12 Eligibility Motions and Claim Construction Order
             Did Not Signal Realtime Had a Meritorious Case .................... 44

       B.    Realtime's Dispute Regarding *Alice* Step One Was Not
             Reasonable .................................................................................... 49

       C.    Realtime's Misapplication of Other Cases Was Not
             Reasonable .................................................................................... 50

CONCLUSION ................................................................................................. 52

CERTIFICATE OF SERVICE AND FILING .............................................. 54

CERTIFICATE OF COMPLIANCE .............................................................. 55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptive Streaming Inc. v. Netflix, Inc.,*
    836 F. App'x 900 (Fed. Cir. 2020) ..........................................................*passim*

*Alice Corp. Pty. v. CLS Bank Int'l,*
    573 U.S. 208 (2014) ..........................................................................*passim*

*Bayer CropScience AG v. Dow AgroSciences LLC,*
    851 F.3d 1302 (Fed. Cir. 2017) ..................................................................14

*Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.,*
    393 F.3d 1378 (Fed. Cir. 2005) ..................................................................25

*BSG Tech LLC v. Buyseasons, Inc.,*
    899 F.3d 1281 (Fed. Cir. 2018) ..................................................................21

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.,*
    858 F.3d 1371 (Fed. Cir. 2017) ..................................................................47

*Chore-Time Equip., Inc. v. Cumberland Corp.,*
    713 F.2d 774 (Fed. Cir. 1983) ....................................................................24

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,*
    558 F. App'x 988 (Fed. Cir. 2014) ..............................................................30

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011) ..................................................................30

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) ..................................................................48

*Electric Power Group, LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016) ..................................................................23

*Energy Heating, LLC v. Heat On-The-Fly, LLC,*
    15 F.4th 1378 (Fed. Cir. 2021) ..............................................................14, 15

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016) ..............................................................33, 50

*Google LLC v. Realtime Adaptive Streaming, LLC,*
  2020 WL 959190 (P.T.A.B. Feb. 27, 2020) ....................................36

*Hawk Tech. Sys., LLC v. Castle Retail, LLC,*
  60 F.4th 1349 (Fed. Cir. 2023) ...................................................35

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,*
  572 U.S. 559 (2014) ...................................................14, 44, 47

*Imagineering, Inc. v. Van Klassens, Inc.,*
  53 F.3d 1260 (Fed. Cir. 1995) ....................................................14

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.,*
  876 F.3d 1372 (Fed. Cir. 2017) .............................................*passim*

*Koninklijke KPN N.V. v. Gemalto M2M GmbH,*
  942 F.3d 1143 (Fed. Cir. 2019) ...................................................52

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.,*
  566 U.S. 66 (2012) ................................................................37

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH,*
  603 F.3d 943 (Fed. Cir. 2010) ...............................................46, 47

*Mortgage Application Techs., LLC v. MeridianLink, Inc.,*
  839 F. App'x 520 (Fed. Cir. 2021) ................................................36

*Netflix, Inc. v. Realtime Adaptive Streaming, LLC,*
  2020 WL 120083 (P.T.A.B. Jan. 10, 2020).........................................36

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.,*
  572 U.S. 545 (2014) .........................................................3, 14, 25

*Packet Intel. LLC v. NetScout Sys., Inc.,*
  965 F.3d 1299 (Fed. Cir. 2020)....................................................51

*Raniere v. Microsoft Corp.,*
  887 F.3d 1298 (Fed. Cir. 2018) ...................................................15

*Ex Parte Realtime Adaptive Streaming LLC,*
  Appeal No. 2023-1035 (P.T.A.B. Apr. 19, 2023) .....................................6

*Realtime Adaptive Streaming LLC v. Google, LLC,*
  No. 2:18-cv-03629 (C.D. Cal. Oct. 25, 2018)..................................*passim*

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
41 F.4th 1372 (Fed. Cir. 2022) ................................................................8, 9

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
No. 17-1692 (D. Del. Dec. 12, 2018) .........................................*passim*

*Realtime Adaptive Streaming LLC v. Sling TV, L.L.C.*,
No. 21-2268, 2023 WL 3373583 (Fed. Cir. May 11, 2023) ..................*passim*

*Realtime Data LLC v. Array Networks Inc.*,
556 F. Supp. 3d 424 (D. Del. 2021) ..............................................51

*Realtime Data LLC v. Reduxio Sys., Inc.*,
831 F. App'x 492 (Fed. Cir. 2020) ..............................................51

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017) ..................................... 18, 20, 23, 34

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*,
858 F.3d 1383 (Fed. Cir. 2017) ..............................................24

*In re Rudy*,
956 F.3d 1379 (Fed. Cir. 2020) ......................................... 17, 18

*Sling TV, L.L.C. v. Realtime Adaptive Streaming LLC*,
840 F. App'x 598 (Fed. Cir. 2021) ..................................5, 27, 36

*Stone Basket Innovations, LLC v. Cook Med. LLC*,
892 F.3d 1175 (Fed. Cir. 2018) ..............................................40

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) ..............................................51

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) .........................................*passim*

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020) ..............................................52

*United Cannabis Corp. v. Pure Hemp Collective Inc.*,
66 F.4th 1362 (Fed. Cir. 2023) ..............................................19

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253 (Fed. Cir. 2017) ..............................................52

*WPEM, LLC v. SOTI Inc.*,
    837 F. App'x 773 (Fed. Cir. 2020) ...................................................................24

**Statutes**

28 U.S.C. § 1927 ........................................................................................... 24, 40

35 U.S.C. § 101...............................................................................................*passim*

35 U.S.C. § 285...............................................................................................*passim*

35 U.S.C. § 315(b) ................................................................................................5

**STATEMENT OF RELATED CASES**

***Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*, No. 21-2268 (Fed. Cir.).**  This is a related appeal of a summary judgment order finding Realtime's '610 patent ineligible under 35 U.S.C. § 101.  This appeal was argued on May 5, 2023, before a panel consisting of Judges Lourie, Hughes, and Stark.  On May 11, 2023, the panel affirmed the summary judgment order, pursuant to Federal Circuit Rule 36.  As of the filing of this brief, that decision has not yet mandated, as Realtime's deadline to file a petition for rehearing has not yet expired.

# COUNTER-STATEMENT OF THE ISSUES

1. Did the district court correctly determine that this is an "exceptional case" under 35 U.S.C. § 285, where the '610 patent was manifestly ineligible for patenting under 35 U.S.C. § 101, particularly in view of *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014), and its progeny, and in view of a multitude of other "red flags" determined by the district court to evidence that the '610 patent was ineligible?

# INTRODUCTION

Realtime forced DISH[1] to litigate—for many years and at great cost—against the '610 patent, which was manifestly patent ineligible under 35 U.S.C. § 101. The '610 patent's fate has been conclusively determined, with this Court affirming the district court's summary judgment ineligibility ruling. DISH respectfully requests the Court confirm here that the district court did not abuse its discretion in deeming Realtime's assertion of the '610 patent exceptional, entitling DISH to fees under 35 U.S.C. § 285.

A straightforward application of the exceptional-case standard leads to that result. The district court derived ample support from the record in determining that the weaknesses in Realtime's case made it "stand out" from others per *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The district court made specific factual findings to conclude that a host of red flags should have alerted Realtime that the '610 patent was ineligible, making Realtime's continued assertion efforts unreasonable. This Court's precedent supports finding a case exceptional on that very basis. Because the case was exceptional, the district court valued the level and duration of fees DISH is owed in this case, which, apart from the exceptionality finding, Realtime does not challenge on appeal.

As the district court lived with the case from its infancy, its exceptionality and fees determinations are owed significant deference, and should be affirmed.

---

[1] This brief collectively refers to all Defendants-Appellees as "DISH."

## COUNTER-STATEMENT OF THE CASE AND FACTS

**I.     The '610 Patent Covers the Patent-ineligible Concept of Selecting a Compression Scheme**

The '610 patent—now confirmed ineligible by this Court—is directed to selecting a compression scheme.  Compression was a well-known concept long before the '610 patent was filed, as the '610 patent admits.  Appx60 (2:44-46) ("Data compression is **widely used** to reduce the amount of data required to process, transmit, or store . . . information."); Appx1407 ¶6.[2]  Realtime acknowledged that the '610 patent did not invent any compression scheme.  Appx1417-1420.  The '610 patent also admits that compression algorithms were known.  Appx60 (1:31-36) ("There are a variety of data compression algorithms that are currently available"); Appx1407-1408 ¶¶7-8.

Thus, the only alleged novelty in these claims would be in selecting a particular prior art compression algorithm from a known set.  The problem is that the asserted claims simply recite that a selection is made without specifying how that selection is made or the parameters or attributes used to make the selection.  The claims cover simply the abstract process of selecting a compression scheme.

Claim 1 of the '610 patent is representative:

> 1. A method, comprising:
>
> determining, a parameter or an attribute of at least a portion of a data block having video or audio data;
>
> selecting one or more compression algorithms from among a plurality of compression algorithms to apply to the at least the portion of the data block based upon the determined parameter or attribute and a

---

[2] Unless noted, all emphasis added.

throughput of a communication channel, at least one of the plurality of compression algorithms being asymmetric; and

> compressing the at least the portion of the data block with the selected compression algorithm after selecting the one or more, compression algorithms.

Appx69 at cl. 1.

Within the same family of the '610 patent is U.S. Patent No. 8,934,535 that Realtime also asserted against DISH and that is highly similar. *Compare* Appx27, Appx56-69, *with* Appx508-509, Appx537-552.

## II. Invalidation of Challenged Claims of the Asserted Patents at the Patent Office

### A. IPRs of the '610 & '535 Patents

While the district court case against DISH was pending, DISH and several other companies filed a series of *inter partes* review proceedings seeking to invalidate the '610 and '535 patents. Over Realtime's objections, the Board instituted all of the petitioned IPRs on these patents. The district court stayed the case in light of these institutions. Appx95 at Dkt. 162. The Board never resolved the merits on the proceedings instituted for the '610 proceeding, however. Just weeks before issuing a final written decision, the Board "deinstituted" the proceeding, reversing its institution decision, finding the proceeding time-barred under 35 U.S.C. § 315(b), a decision this Court held was nonappealable. *See Sling TV, L.L.C. v. Realtime Adaptive Streaming LLC*, 840 F. App'x 598 (Fed. Cir. 2021). The IPRs on the sister '535 patent proceeded to findings of unpatentability. Realtime abandoned its appeal of these decisions, making invalidation of the '535 patent challenged claims final. *See id.* at 598.

**B. Final Rejection of '610 Patent Entered in *Ex Parte* Reexamination**

In addition to the IPR proceedings, an *ex parte* reexamination proceeding was ordered against the '610 patent. Determination – Reexamination Ordered, Reexamination No. 90/014,546 (U.S.P.T.O. Aug. 7, 2020); Appx1500. After several office action rejections, *see, e.g.*, Appx1658-Appx1736, the examiner entered a final rejection of the challenged '610 patent claims. Reexam – Final Rejection, Reexamination No. 90/014,546 (U.S.P.T.O. Sept. 20, 2021). While the instant appeal was pending, the Board affirmed the Examiner's rejections. *Ex Parte Realtime Adaptive Streaming LLC*, Appeal No. 2023-1035 (P.T.A.B. Apr. 19, 2023).

**III. Section 101 Ineligibility Findings of Asserted Patents**

**A. DISH's § 101 Motion on the Pleadings**

Amidst these validity challenges, DISH also argued before the district court that the '610 patent was subject matter ineligible under 35 U.S.C. § 101. DISH first raised this argument before the case was stayed for IPR in a Rule 12(b)(6) motion to dismiss and a Rule 12(c) motion for judgment on the pleadings. Appx1495-1497; Appx274-276. During the Rule 12 motions hearing, the district court expressed doubts about the '610 patent's eligibility, remarking: "Maybe this is just an abstract concept. This doesn't sound like something you would patent. It doesn't sound like [it's] technology. It just sounds like an idea." Appx386 (9:9-14). Realtime argued that the district court should engage in claim construction before deciding the merits of the eligibility challenge. Appx388-389 (11:11-12:4). The district court decided to perform claim construction before rendering an eligibility determination, and denied the motion without prejudice. Appx391 (14:9-15) ("[W]e need to get these terms

defined and then see where we are.")).  The district court construed the claims just before staying the case for IPR.  Appx1209-1210.

**B.    Other Courts Find the '535 Patent Ineligible and Enter Fees Against Realtime**

While the case was stayed pending IPR, two other tribunals determined that the asserted claims of the related '535 patent were § 101 ineligible.

**1.    *Google* Decision in Central District of California**

In a case Realtime filed against Google, the Central District of California held claims 15-30 of the '535 patent ineligible, finding they are "directed to an abstract idea" and "fail[] to provide an inventive concept."  *Realtime Adaptive Streaming LLC v. Google, LLC*, No. 2:18-cv-03629, Dkt. 36 at 9-10 (C.D. Cal. Oct. 25, 2018), *available at* Appx1448-1462.  At *Alice* Step One, the court found that "the focus of Claim 15 is not on a particular system for carrying out the claimed steps, but on the abstract idea of making a choice between known options based on an identified parameter."  *Id.* at 8 (Appx1459).  The court found that the specification—which is nearly identical to the '610 patent's specification—indicates that "this choice can be performed manually by a user."  *Id.* at 8-9 (Appx1459-1460).  At *Alice* Step Two, the court noted that the claims embodied only the abstract idea itself, and that "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."  *Id.* at 10 (Appx1461) (quoting *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018)).  The court then held claims 15-30 of the '535 patent ineligible.  Appx1462.

### 2. *Netflix* Decision in District of Delaware

A magistrate judge in the District of Delaware also found the '535 patent claims ineligible in Realtime's suit against Netflix, holding that "the lack of an inventive concept in [representative] claim 15 [of the '535 patent] precludes patent eligibility." *Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. 17-1692, Dkt. 48 at 22 (D. Del. Dec. 12, 2018) (report & recommendation), *available at* Appx1463-1499. *Netflix* concluded in its Step One analysis that the '535 patent never set out a particular solution to the alleged problem of "efficient data storage, access speed, and addressable data space" and provides "no technical detail describing how to achieve" the results it claims. *Id.* at 12 (Appx1475). The decision concluded that the '535 patent covered abstract ideas related to data encoding and evaluation/selection processes. *Id.* at 12-13 (Appx1475-1476) (citing *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322 (Fed. Cir. 2017); *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 F. App'x 950, 955 (Fed. Cir. 2014)). For the Step Two analysis, the magistrate judge's opinion noted that the selected compression algorithms are both "conventional and generic" and that the specification describes the invention working with conventional hardware and software. *Id.* at 23 (Appx1486). The *Netflix* decision thus recommended that the '535 patent be held ineligible under § 101.

Angling to avoid the ineligibility recommendation, Realtime dismissed its case before the Delaware district court could rule on the magistrate judge's report and recommendation finding the claims ineligible. *See Realtime Adaptive Streaming LLC v. Netflix, Inc.*, 41 F.4th 1372, 1376-77 (Fed. Cir. 2022). Realtime then immediately re-filed its '535 patent case against Netflix in the Central District of California. *Id.* at

1375-76.  The California district court awarded fees against Realtime pursuant to 35 U.S.C. § 285 and its inherent powers to constrain Realtime's improper forum shopping.  *Id.* at 1377.

This Court recently affirmed that fees award, explaining that "Realtime was aware that its lawsuit in Delaware was undeniably tanking, making its decision to run off to another jurisdiction in hopes of getting a more favorable forum totally unjustified, and improper."  *Id.* at 1379.  This Court described Realtime's actions as "a misuse of the ability to refile to wipe the slate clean when the Delaware action was on the eve of issuing a potentially adverse merits ruling," and "blatant gamesmanship" that "constitutes a willful action for an improper purpose, tantamount to bad faith, and therefore within the bounds of activities sanctionable under a court's inherent power."  *Id.* at 1379-80.

### C.  The District Court Enters Summary Judgment of '610 Patent Ineligibility, and This Court Affirms

Meanwhile, in the DISH case in Colorado, the stay was lifted at Realtime's urging.  Appx97 at Dkt. 179.  Within weeks, DISH wrote to Realtime to notify it that the '610 patent was ineligible, particularly in view of several case law developments that had occurred while the case was stayed.  Appx2146.  DISH indicated it would seek fees if Realtime continued to litigate the '610 patent.  Appx2147.  Realtime pressed forward.

Once expert discovery was complete, DISH moved for summary judgment of ineligibility pursuant to § 101.  Appx1386-1404; Appx1938-Appx1947.  DISH challenged all asserted claims (claims 1, 2, 6, 8-14, 16, 18), Appx1386-1387,

demonstrating that claim 1 of the '610 patent was representative. Appx1389-1390 & n.1. DISH argued that claim 1 simply presented the abstract idea of selecting a compression algorithm based on data characteristics, thus failing *Alice* Step One. Appx1389-1397. DISH also demonstrated that the '610 patent lacked an inventive concept that added something more to bestow eligibility on its claims, thus failing *Alice* Step Two. Appx1397-1401.

The district court granted DISH's motion, ruling that the asserted claims of the '610 patent covered a patent-ineligible abstract concept. Appx2013; Appx2004-2005. The district court analogized this case to *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900 (Fed. Cir. 2020). Although recognizing that *Adaptive Streaming* was not binding, the district court nonetheless found this Court's "order to be persuasive," as that case also concerned encoding data into different formats. Appx2006. Particularly, the district court noted that the '610 patent was similar to the *Adaptive Streaming* patent because the "absence of implementation details is evident on the face of the patent." Appx2014. The district court also cited the *Google* and *Netflix* § 101 decisions for the '535 patent as persuasive authority. Appx2006-2009. The district court rejected Realtime's significant reliance on the claim term "throughput of the communication channel," and otherwise found that Realtime's eligibility arguments improperly imported details from the specification into the claims. Appx2010-2011, Appx2013-2014.

At *Alice* Step Two, the district court concluded that the '610 patent did not claim or even disclose an unconventional compression scheme or other inventive concept. Appx2014, Appx2005. The district court also held that claim 1 was properly

treated by DISH as representative, found that Realtime failed to provide any basis to meaningfully distinguish the other claims, and thus extended its § 101 ruling to all of the asserted '610 patent claims.  Appx2012.

Realtime appealed the district court's summary judgment order, and this Court heard oral argument on May 5, 2023.  During Realtime's argument, Judge Hughes remarked that claims like the '610 patent's "rarely" survive § 101 scrutiny.  Oral Arg. at 10:35-11:15, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-2268_05052023.mp3.  Judge Hughes expressed that he was "having a problem understanding why" the '610 patent "is just not abstract" because the patent "just gives you the idea of doing it," but "doesn't tell you how," which seems "[quintessentially] within all of our 101 jurisprudence."  *Id.*  On May 11, 2023, the Court affirmed the summary judgment order without opinion, pursuant to Federal Circuit Rule 36.  *Realtime Adaptive Streaming LLC v. Sling TV, L.L.C.*, No. 21-2268, 2023 WL 3373583, at *1 (Fed. Cir. May 11, 2023).

## IV.  Section 285 Exceptional Case Finding Leads to Fees Award Against Realtime

After invalidating the asserted claims of the '610 patent, DISH moved for fees asserting that Realtime maintained the case in spite of the claims being clearly ineligible under § 101.  Appx2022.  DISH outlined a timeline of events indicating that Realtime knew or should have known that the '610 patent was ineligible when it urged the court to lift the stay.  Appx2025.  Thus, DISH sought its fees from the lifting of the stay through the end of the case.  Appx2031.

The district court agreed, deeming the case exceptional and finding that DISH was entitled to attorneys' fees. Appx1-8. Specifically, the court found "that this case was 'exceptional' because Realtime disregarded repeated indicators that the '610 patent was likely invalid and pressed on at great expense to the defendants (and itself)." Appx3. The court went on to describe a series of "red flags" that occurred over the course of the case that should have signaled to Realtime that the '610 patent was ineligible. They were:

1. The *Google* and *Netflix* decisions finding claims of the '535 patent ineligible;

2. The Federal Circuit's *Adaptive Streaming* decision;

3. The PTAB's invalidation of the '535 patent;

4. The reexamination finding that the '610 patent is invalid under §§ 102, 103;

5. DISH's notice letter to Realtime; and

6. The declaration of DISH's expert, Dr. Bovik, in support of DISH's summary judgment motion.

Appx4-7.

The district court concluded that, by "consider[ing] the totality of the circumstances leading up to this Court's grant of summary judgment on July 31, 2021, I find that Realtime's dogged pursuit of the case notwithstanding those danger signals renders this an exceptional case" and that DISH is entitled to an award of reasonable attorney's fees. *Id.* Appx8-10; Appx12-13.

Following evidentiary hearings, the district court awarded DISH approximately $3.9 million in fees covering the period from when the stay was lifted until the

summary judgment award, a time period and an amount that are not contested in this appeal. Appx14, Appx23.

**SUMMARY OF THE ARGUMENT**

The district court did not abuse its discretion in finding Realtime's case was exceptional due to the weakness of Realtime's eligibility position for the '610 patent. The '610 patent quite plainly failed the *Alice* test for eligibility, at both Steps One and Two. The district court held as much, and this Court has now affirmed that ruling, rendering the '610 patent ineligible under § 101.

This Court's prior decisions hold that a case may be found exceptional under § 285 solely based on the unreasonableness of a patentee's eligibility position. Applying that law here, the district court acted well within its discretion in deeming this case exceptional. Realtime marched on undeterred, despite the multitude of warning signs—or "red flags" as the district court coined them—that the '610 patent was ineligible. Among these were ineligibility rulings issued for claims of the '610 patent's closely related sister, the '535 patent, and the *Adaptive Streaming* ruling this Court issued on a highly similar patent. These well-supported factual findings provide a reasoned basis for the court's exceptionality finding. Realtime's arguments on appeal—offered to demonstrate that its belief of eligibility was legitimate—are weak, and cannot disrupt the district court's discretionary determination that the case was exceptional.

# ARGUMENT

## I. Standard of Review

An "exceptional case," as defined by 35 U.S.C. § 285, "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC*, 572 U.S. at 554. A case may be exceptional "based solely on the weakness of [a patentee]'s post-*Alice* patent-eligibility arguments and the need to deter future 'wasteful litigation' on similarly weak arguments." *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1377 (Fed. Cir. 2017) (citing *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* (quoting *Octane Fitness, LLC*, 572 U.S. at 554).

An exceptionality determination is reviewed for an abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563-64 (2014). Abuse of discretion is "a highly deferential standard of appellate review." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017). "[T]he appellant must show that the district court made 'a clear error of judgment in weighing relevant factors or in basing its decision on an error of law or on clearly erroneous factual findings.'" *Energy Heating, LLC v. Heat On-The-Fly, LLC*, 15 F.4th 1378, 1382 (Fed. Cir. 2021) (quoting *Bayer*, 851 F.3d at 1306); *see also Imagineering, Inc. v. Van Klassens, Inc.*, 53 F.3d 1260, 1267 (Fed. Cir. 1995) (holding in § 285 appeal "[d]iscretion is abused if the record contains no basis on which the district court rationally could have

made its decision or if the judicial action is arbitrary, fanciful or clearly unreasonable."). This Court accords "great deference to the district court's exercise of discretion in awarding fees." *Energy Heating*, 15 F.4th at 1382. "Because the district court lives with the case over a prolonged period of time, it is in a better position to determine whether a case is exceptional and it has discretion to evaluate the facts on a case-by-case basis." *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1308 (Fed. Cir. 2018).

## II. The '610 Patent Was Clearly Patent Ineligible

Under 35 U.S.C. § 101 jurisprudence, particularly following the Supreme Court's *Alice* decision, the '610 patent was clearly ineligible for patenting. Realtime, however, asserted the patent several years after *Alice* issued, and presented weak arguments that could not support the patent's eligibility. DISH, on the other hand, was forced by Realtime's claims to expend significant resources litigating the case. DISH ultimately invalidated the '610 patent on summary judgment by clearly showing that the '610 patent was ineligible. This Court recently affirmed that decision, with the '610 patent being conclusively deemed patent ineligible under § 101. As this appeal focuses on the weakness of Realtime's eligibility counterarguments, however, this section summarizes why the '610 was so clearly ineligible under post-*Alice* § 101 jurisprudence.

### A. The '610 Patent Failed *Alice* Step One Because It Is Manifestly Directed to an Abstract Idea

DISH argued that the '610 patent is directed to an abstract idea at *Alice* Step One because it claims the mere selection of a compression algorithm based on data characteristics and parameters. The patent is the essence of an abstract idea because it

15

never describes *how* to select a compression algorithm, it just presents some high-level considerations one might possibly make in performing such a selection. This much is demonstrated by analyzing the three steps in the '610 patent's claim 1, which the district court found to be representative. Appx2012.

*First*, is the "determining" step, which recites, "**determining**, a parameter or an attribute of at least a portion of a data block having video or audio data." Appx69 at cl. 1. It simply covers the notion that one would have in mind some unidentified parameter to consider when selecting a compression algorithm, without describing how to determine the parameter.

*Second*, is the "selecting" step. It recites, "**selecting** one or more compression algorithms from among a plurality of compression algorithms . . . based upon the determined parameter or attribute and a throughput of a communication channel, at least one of the plurality of compression algorithms being asymmetric." Appx69 at cl. 1. This step simply claims taking the unidentified parameter or attribute, along with the communication channel's throughput, and selecting an unknown compression algorithm[3] "based" on these characteristics. No relationship or dependency between the unidentified parameter/throughput and the algorithm is claimed or suggested.

---

[3] No particular algorithm must be selected. The claims require only that one asymmetric algorithm be *available* to select, although it need not be selected or used. *See* Appx69 at cl. 1 ("selecting . . . from among a plurality of compression algorithms" wherein "at least one of the plurality of compression algorithms [is] asymmetric").

The selection step's recitation of considering "throughput" does not save the claims. In *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900 (Fed. Cir. 2020), this Court held ineligible claims that made a compression selection based on a bandwidth condition.[4] 836 F. App'x at 900 (disallowing claims that "dynamically selected" a compressed video output signal in response to a change in bandwidth condition). The district court's summary judgment order, affirmed by this Court, found *Adaptive Streaming* "persuasive," noting that the '610 patent resembled the patent at issue in *Adaptive Streaming* because the "absence of implementation details is evident on the face of the patent." Appx2006, Appx2014. As discussed later, the district court's exceptionality order explained that the *Adaptive Streaming* decision was a "red flag for the present case," indicating that the '610 patent was ineligible. Appx6; *see also supra* Arg. Sec. III.B.1.

Also telling is that the '610 patent claims never contemplate or dictate that a particular selection or selections be made. Even patents detailing a much more concrete selection have been held ineligible. For example, the decision in *In re Rudy*, 956 F.3d 1379 (Fed. Cir. 2020), held claims "directed to the abstract idea of ***selecting*** a fishing hook ***based on*** observed water conditions" were ineligible despite inclusion in the claims of a chart mapping the specific hook to select for a particular water

---

[4] Tellingly, the '610 patent connects the term bandwidth with the claimed throughput. *See* Appx63 (7:53-54) (describing invention as "method for compressing and decompressing based on . . . **throughput (bandwidth)**"); Appx60 (1:24-25), Appx64 (9:12-13) (same). Realtime's expert also took the position that bandwidth is "very related" to throughput, and did not identify any distinction between the two that saves the '610 patent claims from abstractness, let alone any evidence of such a distinction. Appx1958 (193:17-25).

condition. *Id.* at 1381, 1384-85. The '610 patent claims never describe that for a certain level of throughput, a certain algorithm or type of algorithm should be selected. Instead, the claims simply recite that algorithm selection occur "based" on undefined throughput and some other undefined parameter. *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (holding for claims using only "generic functional language to achieve these purported solutions" that the "[i]nquiry therefore must turn to any requirements for how the desired result is achieved," else the patent is ineligible).

*Third*, the "compressing" step recites, "**compressing** the at least the portion of the data block with the selected compression algorithm after selecting the one or more, compression algorithms." Appx60 at cl. 1. This step simply applies the compression algorithm that was somehow chosen with the "selecting" step. This Court has repeatedly treated the concepts of data compression and encoding as patent ineligible, comparing them to "Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's 'one if by land, two if by sea' signaling system." *RecogniCorp,* 855 F.3d at 1326-27. After all, they "all exemplify encoding at one end and decoding at the other end." *Id.*; *see also Two-Way Media*, 874 F.3d at 1334; *Adaptive Streaming*, 836 F. App'x at 900. To be clear, the '610 patent did not invent any new or novel form of data compression, and Realtime never argued that it did.

It was therefore eminently clear that the '610 patent did not pass *Alice* Step One.

## B.     Realtime Could Not Save the '610 Patent at *Alice* Step Two

The '610 patent claimed nothing that even potentially could save it at *Alice* Step Two. Tellingly, Realtime's opening brief in this fees appeal does not present any arguments based on the purported reasonableness of its Step Two arguments.[5]  That's not surprising.  The asserted claims plainly lack any nonconventional technological solution or inventive concept.  Representative claim 1 included no particular arrangement of hardware whatsoever.  And despite its repeated invocation of an alleged inventive "ordered combination," Realtime never detailed what it thought the ordered combination was.  *See* Appx1769, Appx1773.

Perhaps recognizing this shortcoming with its claims, Realtime relied before the district court and on appeal on components and method steps that are absent from the '610 patent claims.  For example, Realtime proclaimed that the '610 patent provides "unconventional technological solutions including the combination of (1) **asymmetric compressors**, (2) **two or more compressors**, (3) **selecting a compressor** based on a parameter of video or audio data, and (4) a throughput of a communications channel."  Appx1769; *see also* Realtime Principal Brief, *Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*, No. 21-2268, Dkt. 24 (Fed. Cir. May 13, 2022) ("Merits BB") at 48 (same).  The term "compressor" is entirely absent from the

---

[5] Were Realtime to rely on *Alice* Step Two for the first time in reply, that argument would be waived.  *United Cannabis Corp. v. Pure Hemp Collective Inc.*, 66 F.4th 1362 (Fed. Cir. 2023) ("[A]n issue not raised by an appellant in its opening brief is waived.").

'610 patent claims and specification.  *See generally* Appx27-70.  Instead, the "compressor" limitation exists only in the related '535 patent.  *E.g.*, Appx551 at cl. 15.  Through all the district court and Federal Circuit briefing, it wasn't until its merits Gray Brief that Realtime finally withdrew this argument, admitting that compressors were not claimed by the '610 patent.  Realtime Corrected Reply Brief, *Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*, No. 21-2268, Dkt. 41 at 25-26 (Fed. Cir. Oct. 28, 2022).

At Step Two, Realtime also clung to specification disclosures found nowhere in the asserted claims.  *See, e.g.*, Appx1770-1771 (citing Appx65 (12:14-35) for use of an "'asymmetric' compressor" that features "slow compress and fast decompress"); *see also* Merits BB 50 (same).  The problem Realtime faced here is that the law is clear that a purported inventive concept must exist in the claims to satisfy *Alice* Step Two.  *See RecogniCorp*, 855 F.3d at 1327 ("To save a patent at step two, an inventive concept must be evident in the claims." (citing *Alice*, 134 S. Ct. at 2357)); *Am. Axle*, 967 F.3d at 1293 ("[W]e have repeatedly held that features that are not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis.").

Realtime's arguments that the claim's recitation of asymmetrical compression algorithms or the consideration of throughput saved the patent at Step Two also wholly lacked merit.  *See, e.g.*, Appx1769-1772; *see also* Merits BB 48-53.  Asymmetrical compression algorithms were a well-known species of compression algorithms, as even Realtime's expert, and the '610 patent, acknowledged.  Appx1954-1955 (61:14-

62:12) (Rhyne Dep. Tr.) ("[A]symmetric compression algorithms were known before this patent was filed . . . .")); Appx60 (1:33-39), Appx64 (9:60-10:4). "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea." *BSG*, 899 F.3d at 1290-91.

As for the claim's consideration of throughput in making a compression decision, it also could not save the claims at Step Two. In making this argument, Realtime could not distinguish the claims in *Adaptive Streaming*, which called for "dynamically select[ing]" a compressed video signal "in response to a change in **bandwidth**," and as noted above, the '610 patent repeatedly equates bandwidth to throughput. *See, e.g.*, Appx63 (7:53-54), Appx60 (1:24-25), Appx64 (9:12-13). In *Adaptive Steaming*, this Court held that the claims "flunk the second step of the *Alice* inquiry." 836 Fed. App'x at 903. Like there, use of throughput as part of the selection in the '610 patent did not amount to a "specific, unconventional encoding, decoding, compression, or broadcasting technique[]," and it is no different from an eligibility perspective as using some other channel parameter. *Id.* at 904. As the district court noted, "the use of 'throughput of the communication channel' to select a compression algorithm is itself an abstract concept." Appx2011. "As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it" at Step Two. *BSG*, 899 F.3d at 1291. The throughput limitation simply was not a legitimate basis for Realtime to believe it could prevail at Step Two.

Like with Step One, it was entirely clear that the '610 patent did not pass *Alice* Step Two, and thus was not eligible for patenting under § 101.

## III. The District Court Did Not Abuse Its Discretion in Finding This Case Exceptional

### A. Assertion of a Clearly Ineligible Patent Is Grounds for an Exceptionality Finding

The district court found that Realtime's assertion of the ineligible '610 patent made this case exceptional, a finding that is supported by other decisions of this Court. Most notably, in *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372 (Fed. Cir. 2017), the Court affirmed a district court's § 285 exceptionality finding based solely on the weakness of the patentee's eligibility position. In *Inventor Holdings*, the accused infringer filed a § 101 motion to dismiss on the pleadings under Fed. R. Civ. P. 12(c). *Id.* at 1376. The district court granted the motion, concluding that the patent was directed to the abstract idea of "local processing of payments for remotely purchased goods," and that, contrary to patentee's arguments, none of the asserted patent's claims "are restricted to any specific, inventive ways of storing codes in databases or electronically applying them" under *Alice* Step Two. *Id.* at 1376. This Court affirmed without opinion under Federal Circuit Rule 36. *Id.*

Meanwhile, the accused infringer sought a declaration that the case was exceptional pursuant to § 285. The accused infringer's argument for exceptionality was that the patentee "should have reevaluated its case after *Alice* and dismissed the action, but did not." *Id.* at 1377. The district court agreed, finding the case exceptional and awarding fees for the time the patentee continued to litigate the case

post-*Alice*, explaining that "following the *Alice* decision, [the patentee]'s claims were objectively without merit." *Id.*

This Court affirmed. It held that in determining that the "case was exceptional **based solely** on the weakness of [patentee]'s post-*Alice* patent-eligibility arguments and the need to deter future 'wasteful litigation' on similarly weak arguments," the district court "acted within the scope of its discretion." *Id.* The Court found that the patent was "manifestly directed to an abstract idea," and that it also failed to present an inventive concept at Step Two, citing *Alice* and several of this Court's other decisions. *Id.* at 1378. In so holding, the Court rejected the patentee's argument "that § 101 was, and is, an evolving area of law and that the § 101 inquiry in this case was therefore difficult." *Id.* at 1379. The Court explained that "there is no uncertainty or difficulty in applying the principles set out in *Alice* to reach the conclusion that the [asserted] patent's claims are ineligible," and that "[i]t was [patentee's] responsibility to reassess its case in view of new controlling law." *Id.*

The same is true here, which dispels Realtime's argument—citing to pre-*Alice*, non-majority, and district court opinions—that § 101 jurisprudence is a "murky morass." Blue Br. ("BB") 20-21. This was not an edge case, and Realtime's continued analysis of *Alice* and its progeny inevitably would have led to the conclusion that the '610 patent is ineligible. Indeed, the district court made this specific finding in concluding that the case was exceptional. *See infra* Arg. Sec. III.B.2. And unlike *Inventor Holdings*, seven years had passed from *Alice*'s issuance until the time at which the district court started the clock for fee accrual in this case. In that time, this Court issued its precedential decisions in *Two-Way Media*, *RecogniCorp*, and *Electric Power*

*Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). Realtime had more than ample time to examine this body of law that had developed demonstrating ineligibility—the same body of law on which this Court based its *Adaptive Streaming* decision. 836 Fed. App'x at 903.[6]

Similarly, *Inventor Holdings* implicitly rejects that the presumption of validity prevents an exceptional case finding based on a patentee's eligibility arguments. *Contra, e.g.*, BB 53. The presumption of validity is not absolute; it is a presumption, which necessarily means it may be rebutted, as it was here. *See Chore-Time Equip., Inc. v. Cumberland Corp.*, 713 F.2d 774, 780 (Fed. Cir. 1983) ("The presumption [of validity] is, like all presumptions in law, a starting place" and "[t]o treat the presumption as irrebuttable would be to oust the courts of their jurisdiction to consider a challenge to the validity of patents before them."). When the presumption has been rebutted, a case may be found exceptional on that basis. *See Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1388 (Fed. Cir. 2017) (reversing denial of § 285 exceptional case finding where district court "fail[ed] to consider [patentee]'s willful ignorance of the prior art"); *see also WPEM, LLC v. SOTI Inc.*, 837 F. App'x 773, 774 (Fed. Cir. 2020) (rejecting argument that plaintiff "should be able to rely on

---

[6] *Gust, Inc., v. Alphacap Ventures, LLC* does not support Realtime's argument, BB 22, that "colorable" § 101 arguments are not subject to exceptionality findings. 905 F.3d 1321 (Fed. Cir. 2018). In *Gust*, the district court found the case exceptional for the patent's weakness under § 101 in view of *Alice*. *Id.* at 1326-27. That determination was not challenged—and, thus, was not examined—on appeal, and stood. *Id.* Rather, the appeal focused on the patentee's joint and several liability for attorneys' fees under 28 U.S.C. § 1927 for "unreasonable" and "bad faith" actions, which is not at issue in this appeal. *Id.* Regardless, Realtime's § 101 arguments were not colorable.

the presumption of validity afforded without performing a separate validity or enforceability analysis," and affirming award of § 285 attorneys' fees for patentee's failure to analyze validity).  And Realtime's further argument that it never accepted the risk of having to pay attorney fees because of the presumption of validity is contrary to the law.  BB 18, 36.  Section 285 is part of the patent statute, and any party who files a patent infringement runs the risk that § 285 will attach to its case and it will be liable for its opponent's attorney fees if it pursues an exceptional case.

The Court's decision in *Inventor Holdings* also dispels Realtime's argument that the district court "never found that Realtime committed litigation misconduct or asserted the '610 patent in bad faith," suggesting that the district court needed to make such a finding to conclude that the case was exceptional.  BB 17.  *Octane Fitness* disposed of that notion.  Under the pre-*Octane Fitness* exceptionality standard established in *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), "a case [wa]s 'exceptional' only if a district court either finds **litigation-related misconduct** of an independently sanctionable magnitude or determines that the litigation was both '**brought in subjective bad faith**' and 'objectively baseless.'"  *Octane Fitness*, 572 U.S. at 554-55.  The Supreme Court held, however, that "[t]his formulation superimposes an inflexible framework onto statutory text that is inherently flexible," and rejected it.  *Id.* at 555.  Instead, the standard the Supreme Court adopted is that an exceptional case "is simply one that **stands out from others** with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."  *Octane Fitness*, 572 U.S. at 554.

In *Inventor Holdings*, like here, the case stood out from others "**based solely** on the weakness" of the patentee's eligibility arguments, without a specific finding of litigation misconduct or bad faith. 876 F.3d at 1377.

**B.    The District Court's "Red Flag" Analysis Presents Specific Factual Findings Supporting the Exceptionality Determination**

Realtime vaguely suggests throughout its brief that the district court erred by failing to make factual findings in support of its exceptionality findings. *E.g.*, BB 22, 37. Yet, the district court outlined a series of "red flags" that it found Realtime should have considered before continuing with its assertion of the '610 patent. Appx3-Appx8. These red flags formed the basis of the district court's exceptionality finding. *See, e.g.*, Appx3 ("I find that this case was 'exceptional' because Realtime disregarded repeated indicators that the '610 patent was likely invalid and pressed on at great expense to the defendants (and itself).") According to the district court, "by carrying on despite numerous danger signals or red flags as I have called them, Realtime accepted the risk of having to reimburse defendants' reasonable attorneys' fees." Appx8. "Realtime's dogged pursuit of the case notwithstanding those danger signals renders this an exceptional case." *Id.* Each of these red flags, considered individually or collectively, supports the district court's conclusion that Realtime's case was exceptional. The district court operated well within its discretion in rendering these findings and analyzing their support of its exceptionality decision.

**1.    The *Google* and *Netflix* Decisions**

The first red flag the district court noted was the *Google* and *Netflix* decisions that found claims of the closely related '535 patent ineligible. Realtime had asserted

the '535 patent in addition to the '610 patent against DISH in this suit, but the '535 patent was invalidated in IPR while this case was pending. *See Sling TV*, 840 F. App'x at 598 (noting invalidation of '535 patent for failure to appeal IPR final written decision of invalidity). The '535 and '610 patents descend from common parent applications, share the same title, and have virtually identical specifications. *Compare* Appx27, Appx56-69 ('610 patent), *with* Appx508, Appx537-550 ('535 patent); *see also* Appx4.

Given the similarities between the patents, the district court's exceptionality order explained that the reasoning of the *Google* and *Netflix* ineligibility rulings "featured prominently" in the district court's summary judgment order. Appx4-5. Realtime argues that the *Google* and *Netflix* rulings should not have been considered red flags because it cannot be presumed that related patents rise and fall together when it comes to eligibility. BB 38. This is a straw man because the district court never made this presumption. Rather, it said that the "two cases [*Google* and *Netflix*] should have featured prominently in Realtime's thinking about the present case." Appx5.

As Realtime acknowledges, eligibility is determined on a claim-by-claim basis. BB 38-39. The point made by the district court, then, is that upon the issuance of the *Google* and *Netflix* decisions, Realtime should have asked itself: what differs between '535 patent claim 15 and representative '610 patent claim 1? The answer: not much, and certainly nothing that would separate the '610 patent from the '535 patent from an eligibility perspective. Reproduced below is the claim language of the '610 patent claim 1 and '535 patent claim 15, with emphasis used to show common elements:

| '610 Patent, Claim 1 | '535 Patent, Claim 15 |
|---|---|
| A method, comprising: | A method comprising: |
| determining, a parameter or an attribute of at least a portion of a data block having video or audio data; | determining a parameter of at least a portion of a data block; |
| selecting one or more compression algorithms from among a plurality of compression algorithms to apply to the at least the portion of the data block based upon the determined parameter or attribute and a throughput of a communication channel, at least one of the plurality of compression algorithms being asymmetric; and | selecting one or more asymmetric compressors from among a plurality of compressors based upon the determined parameter or attribute; |
| compressing the at least the portion of the data block with the selected compression algorithm after selecting the one or more, compression algorithms. | compressing the at least the portion of the data block with the selected one or more asymmetric compressors to provide one or more compressed data blocks; and |
| | storing at least a portion of the one or more compressed data blocks. |

Appx69 at cl. 1; Appx551 at cl. 15.

The '535 patent claims, in fact, include additional requirements above and beyond those shared with the '610 patent. For instance, the '535 patent affirmatively requires the selection and use of asymmetric compressors, a narrowing requirement and structure not shared by claim 1 of the '610 patent, as described above. Appx551 at cl. 15 ('535 patent) ("selecting one or more asymmetric compressors;" "compressing . . . with the selected one or more asymmetric compressors"). The '535 patent also requires storage of the compressed data, whereas the '610 patent does not.

*Id.* (claim 15, "storing at least a portion of the one or more compressed data blocks."). Despite these additional requirements, claims of the '535 patent were found ineligible in *Google* and *Netflix*.

Given the similarities between the '610 and '535 patents, it was reasonable and proper for the district court to consider the *Google* and *Netflix* decisions as red flags, which should have factored into Realtime's ongoing analysis of its case. *See* Appx5 ("Claim 15 is so similar to Claim 1 of the '610 patent that the two courts' rulings should have served as a red flag that Claim 1 faced serious trouble."). Indeed, the only distinction that Realtime identifies between the two claims above is that the claim 15 of '535 patent does not recite use of throughput as part of its algorithm selection. BB 39-40. While Realtime argues that this distinction is meaningful, the case law demonstrates otherwise. As explained earlier, this Court's decision in *Adaptive Streaming* deemed claim 42, which claimed that "a different compressed output video signal can be dynamically selected . . . in response to a change in a bandwidth condition," patent ineligible under § 101. 836 F. App'x at 902. Indeed, the district court properly treated the *Adaptive Streaming* decision as another "red flag" that Realtime should have considered. *See infra,* Arg. Sec. III.B.2. The district court correctly noted in its exceptionality order that the throughput term "is itself an abstract idea," and thus it could not have saved the '610 patent from ineligibility. Appx5; *see also supra* Arg. Sec. II.B.

Realtime also argues that the more relevant portion of the *Google* decision was its analysis of the '535 patent's claims 1-14 as well as claims of two other Realtime patents—U.S. Patent Nos. 9,769,477 ('477 Patent) and 7,386,046 ('046 Patent). *See* BB 39, 41-42. But the *Google* court did not rule on the eligibility of claims 1-14 of the '535 patent. It only concluded that claims 15-30 of the '535 patent, which it found were ineligible, were not representative of claims 1-14. Appx1461-1462.

Realtime next argues that the *Google* court's ruling is inapposite because "the Central District's primary concern [was] that claim 15 of the '535 patent could be 'performed manually by a user'," which Realtime alleges is not true for the '610 patent claims. BB 40. Realtime confuses the law. It is true that "a method [that] can be performed by human thought alone is merely an abstract idea and is not patent eligible under § 101." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011). The inverse, however, is not true. That is, claims that cannot be performed manually are not necessarily directed to patentable subject matter. Instead, "the category of patent-ineligible abstract ideas is not limited to methods that can be performed in the human mind." *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 991-92 (Fed. Cir. 2014).

Additionally, there was record evidence that the selection of a compression algorithm *could* be performed by a human. The '610 patent indicates that "the selection process **may be performed** either **manually** or automatically by the controller 11 of the data compression system 12." Appx65 at 12:46-48. The patent

goes on to explain that "a GUI menu can be displayed that allows the user to directly select a given algorithm." Appx66 (14:3-11). And Mr. McErlain, a '610 patent inventor, readily admitted that with his invention, a human selects the compression algorithm based on throughput:

> Q: So **the anticipation [of throughput] is the choice of the engineer or the business person**?
>
> A: **Yeah, yeah**. I mean each company might be different.

Appx1434-1435 (175:12-176:13). Mr. McErlain further admitted that the user ultimately makes the critical selection of the compression algorithm when operating the accused products. Appx1436-1437 (238:21-239:18) ("[T]he user has different adjustments that the user can make to the settings . . . it's the communication between the user and the head end that is critical to determining what blocks get sent.")).[7]

At bottom, the claims in the '535 and '610 patents both relate to the abstract selection of a compression algorithm based on data characteristics without specifying how or why, and the district court was correct to consider the *Google* and *Netflix* decisions red flags that Realtime should have heeded.

---

[7] To the extent Realtime's argument is that the step of compressing data itself cannot be performed manually by a user, that is not necessarily true. Data compression algorithms run the gamut between the incredibly simple and incredibly complex. As the '610 patent is not limited to any particular type of algorithm, it is entirely conceivable that a user could manually apply a simple algorithm to compress data and still satisfy the claims.

## 2.    This Court's *Adaptive Streaming* Decision

The next red flag that the district court identified was this Court's *Adaptive Streaming* decision, discussed earlier. *See supra* Arg. Sec. II. The patent found ineligible in *Adapative Streaming* recited in its representative independent claim "video signals having respective second **compression formats based at least in part on the parameters**." 836 F. App'x at 902. Even more relevant was representative dependent claim 42, which recited "a different compressed output video signal can be dynamically selected . . . **in response to a change in a bandwidth condition**." 836 F. App'x at 902.[8]

As the district court explained, the Court in *Adaptive Streaming* found "that the claims at issue failed the first *Alice* step because they 'were directed to the abstract idea of 'collecting information and transcoding it into multiple formats.'"" Appx6 (quoting *Adaptive Streaming*, 836 F. App'x at 903). The district court next indicated that at the second step, this Court "determined that the claims 'do not incorporate anything that would transform their subject matter into an eligible application of the abstract idea. . . . In particular, there is no identification in the claims or written description of

---

[8] Realtime is wrong that claim 42 was not at focus in *Adaptive Streaming*. BB 44-45. The Court indicated that it was "undisputed that **claims** 39, 40, and **42** are at least **representative** of all, and may be the only, claims at issue in the case." *Adaptive Streaming*, 836 F. App'x at 901. And the briefing in *Adaptive Streaming* demonstrates that the patentee made specific arguments concerning claim 42 and the selection of different compressed signals based on a change in current bandwidth conditions. *E.g.*, Brief of Plaintiff-Appellant, *Adaptive Streaming Inc. v. Netflix, Inc.*, No. 20-1310, Dkt. 15 at 54 (Fed. Cir. Apr. 16, 2020) ("The "one to many" transcoding also enabled another limitation: **dynamic selection of formats best suited to the current bandwidth conditions (claim 42)**. . . . This is yet another limitation which was not well-understood, routine or conventional.").

specific, unconventional encoding, decoding, compression, or broadcasting techniques." *Id.* (quoting *Adaptive Streaming*, 836 F. App'x at 903). And the district court indicated that even before DISH filed its motion, it highlighted *Adaptive Streaming* in its pre-motion notice of intent to file a motion for summary judgment based on invalidity. *Id.* (citing Appx1264).

*Adaptive Streaming* is highly applicable to the facts here, and it was correct for the district court to identify it as a red flag. Realtime's arguments that *Adaptive Streaming* should not have been a red flag do not pass muster. Realtime's first argument is that because *Adapative Streaming* was a nonprecedential decision, it could not have been a red flag. BB 42-43. Yet, the district court did not conclude that *Adaptive Streaming* was binding, or that Realtime should have treated it as such. Instead, in discussing *Adaptive Streaming*, the district court observed that "Realtime notes that an unpublished opinion does not create a binding precedent," to which the court responded "[t]rue, but in this instance, the Court finds the court's order to be persuasive." Appx2006. And in the exceptionality order, the court again noted that *Adaptive Streaming* was not precedential, explaining that "[a]n unpublished opinion does not create a binding precedent, but it was another red flag for the present case."

Even as a nonprecedential decision, *Adaptive Streaming* should have impacted Realtime's thinking, as the district court held. *Adaptive Streaming* is relevant because of its close factual relationship between the patents under review. "[B]oth this court and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). Moreover, under this Court's

rules, "[a]n opinion or order which is designated as nonprecedential is one determined by the panel issuing it as not adding significantly to the body of law." Fed. Cir. R. 32.1(b). Here, it was well-established in precedential decisions penned before *Adapative Streaming* that patents involving encoding and decoding of data and of format conversion—which is what compression is[9]—are ineligible.

Indeed, *Adaptive Streaming* explained that this Court's past decisions have held:

> that **the ideas of** encoding and decoding image data and of **converting formats, including when data is received from one medium and sent along through another, are by themselves abstract ideas**, and accordingly concluded that claims focused on those general ideas governing basic communication practices, not on any more specific purported advance in implementation, were directed to abstract ideas

*Adaptive Streaming*, 836 F. App'x at 903. For support, the decision cited both to *Two-Way Media Limited v. Comcast Cable Communications, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017), and *RecogniCorp*, 855 F.3d at 1326-27, each of which are precedential. And DISH relied on these decisions significantly in both its summary judgment and appeal briefing. Appx1393-1394, Appx1396-1397, Appx1403; DISH Corrected Response Brief, *Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*, No. 21-2268, Dkt. 38 at 13, 23-24, 27-28, 37, 40-41, 42-43, 51 (Fed. Cir. Oct. 24, 2022). Notably, in holding the concept of data compression and encoding as patent ineligible, *RecogniCorp* compared it to "Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's 'one if by land, two if by sea' signaling system." *RecogniCorp*, 855 F.3d at 1326-27. In *Two-Way Media*, the Court held that for claims using only "generic

---

[9] Format conversion is exactly what Realtime's expert Dr. Rhyne described data compression to be. *See* Appx1950 (34:11-23)

functional language to achieve these purported solutions"—like the '610 patent—the "[i]nquiry therefore must turn to any requirements for ***how*** the desired result is achieved," and if none are claimed, the patent is ineligible. 874 F.3d at 1339. Thus, *Adaptive Streaming* merely applied existing law to a patent that aligned closely with the '610 patent.

Further, "[t]he court may refer to a nonprecedential or unpublished disposition in an opinion or order and may look to a nonprecedential or unpublished disposition for guidance or persuasive reasoning . . . ." Fed. Cir. R. 32.1(d). Indeed, the Court did just that with *Adaptive Streaming* in *Hawk Technology*, which issued as a precedential decision. *Hawk Technology* quoted *Adaptive Streaming* to explain that "[f]or example, we have held that 'encoding and decoding image data and . . . converting formats, including when data is received from one medium and sent along through another, are by themselves abstract ideas.'" *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) (quoting *Adaptive Streaming*, 836 F. App'x 900 at 903) (ellipsis in original); *see also id.* ("And again, converting information from one format to another—including changing the format of video data or compressing it—is an abstract idea." (citing *Adaptive Streaming*, 836 F. App'x at 903)). DISH cited this decision in a Rule 28(j) letter before oral argument in the merits appeal, but Realtime did not respond or dismiss its appeal. *See* DISH Citation of Suppl. Auth., *Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*, No. 21-2268, Dkt. No. 58 (Fed. Cir. April 27, 2023).

Realtime also argues that because the patent involved in *Adapative Streaming* included different claim terms and did not share the '610 patent's claim construction,

the district court erred in treating it as a red flag. BB 43-44. But Realtime's argument again misses the point. The district court did not hold that *Adaptive Streaming* was, on its own, wholly dispositive of the '610 patent's eligibility. Rather, it simply noted that the patent involved was factually close enough to the '610 patent that Realtime should have considered it a red flag. Appx6. That conclusion is sound and not an abuse of discretion, as Realtime must show to prevail. That Realtime supposedly believed its cases supported eligibility is beside the point. BB 44. Those cases' patents differed significantly from the '610 patent at issue here, which was confirmed when this Court affirmed the district court's summary judgment order.[10]

### 3. The PTAB's Invalidation of the '535 Patent

The next red flag the district court found was the invalidation in IPR of the highly related '535 patent, described above, *see supra* Arg. Sec. III.B.1. Appx6. *See Netflix, Inc. v. Realtime Adaptive Streaming, LLC,* 2020 WL 120083, at *14 (P.T.A.B. Jan. 10, 2020); *Google LLC v. Realtime Adaptive Streaming, LLC,* 2020 WL 959190, at *16 (P.T.A.B. Feb. 27, 2020). Realtime abandoned its appeal of those decisions and the '535 patent stood as invalid. *See Sling TV*, 840 F. App'x at 598 (noting invalidation of '535 patent for failure to appeal IPR final written decision of invalidity).

---

[10] Realtime's citation to *Mortgage Application Techs., LLC v. MeridianLink, Inc.*, 839 F. App'x 520, 528 (Fed. Cir. 2021), does not help it. In *Mortgage Application*, the Court affirmed a district court's denial of § 285 attorney fees, finding that the § 101 caselaw relied upon by the defendant did not compel an exceptionality finding. *Id.* That holding does not mean, however, that the district court could not rely on highly applicable case law in determining that this case is exceptional and awarding fees, like in *Inventor Holdings*, 876 F.3d at 1379.

The district court was justified in identifying these IPR decisions as additional red flags. Realtime argued that the '610 patent was eligible at *Alice* Step Two because of its purported unconventional arrangement of claim elements. *See, e.g.*, Appx1769-1771. Although conventionality is a separate inquiry from anticipation and obviousness, invalidation on those grounds can suggest nonconventionality. *See Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 90 (2012) ("[I]n evaluating the significance of additional steps, the § 101 patent-eligibility inquiry and, say, the § 102 novelty inquiry might sometimes overlap."). In fact, Realtime itself argued strenuously that a PTAB final written decision confirming validity for a patent related to the '610 patent—the '046 patent—bore on eligibility. Appx1771-1772; Merits BB 52-53. Realtime argued that "the PTO has repeatedly upheld . . . the novelty of a claim element substantially similar to the Court's construction of 'throughput'" and that "[t]his provides additional evidence that the '610 claims contain an inventive concept and are not merely conventional." Appx1772.

Now, Realtime wants to have it both ways. Despite having argued that a PTAB decision on validity supported eligibility, it argues that the '535 patent final written decisions are "legally and factually irrelevant to the issue of whether the claims of the '610 patent are eligible for patenting under § 101." BB 47. Given Realtime's argument that a finding of validity of the '046 patent in IPR demonstrated eligibility of the '610 patent, it strains credulity for Realtime to argue now that there is no relevance to the '535 patent IPR decisions. Again, the '535 patent and '610 patent claims are very similar. As the district court remarked, "[c]laim 1 of the '610 patent and Claim 15 of the '535 patent are so similar as to be essentially the same in substance."

Appx4.  And the district court never held that the '535 patent invalidation somehow controlled the '610 patent eligibility question.  Rather, the district court considered it as simply another red flag that Realtime should have seriously considered, but ignored.  This determination does not constitute an abuse of discretion.  *See Inventor Holdings*, 876 F.3d at 1379 (affirming § 285 fees award based on clear lack of eligibility where there is "no uncertainty or difficulty in applying the principles set out in *Alice* to reach the conclusion that the '582 patent's claims are ineligible").

### 4. The Examiner's Finding of Invalidity of the Asserted '610 Patent Claims in *Ex Parte* Reexamination

The next red flag the district court outlined was the Examiner's determination in an *ex parte* reexamination finding the asserted claims of the '610 patent invalid. Appx7; Appx1500-1736.  As the district court recognized, that determination was not final at the time the district court issued its exceptionality opinion, *see* Appx7, but it has since been affirmed by the PTAB and is subject to appeal to this Court.  *See* DISH Citation of Suppl. Auth., *Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*, No. 21-2268, Dkt. No. 57 (Fed. Cir. April 24, 2023).  Just like the '535 patent IPR discussed above, the reexamination's holding that the asserted claims of the '610 patent are invalid is relevant to the eligibility inquiry, as it pertains to conventionality.  *See supra* Arg. Sec. III.B.3.  As was just discussed, Realtime itself argued that a PTAB decision confirming validity for a related patent—the '046 patent—was relevant to the eligibility of the '610 patent.  Appx1771-1772; Merits BB 52-53; *see supra* Arg. Sec. III.B.3.  Thus, Realtime's argument that a decision finding certain '610 patent claims invalid is wholly irrelevant does not follow.  BB 48-49.

Realtime's other principal argument for why the district court abused its discretion in recognizing the *ex parte* reexaminations as a red flag is that the Court did not cite the reexamination decision in its summary judgment order. BB 49. This is of no moment. As the district court explained, it "did not consider those non-final office actions in [its] decision on the motion for summary judgment." Appx7. The district court nonetheless recognized that these decisions "could have served as additional red flags regarding the viability of Realtime's case." *Id.* The district court is correct because these decisions cast doubt on Realtime's Step Two arguments that the '610 patent introduced a nonconventional arrangement of claim elements. And for all the arguments Realtime presents about the "throughput" limitation having been particularly important for eligibility, that limitation was at issue in the reexamination and the Examiner found it disclosed by the prior art. Like the other red flags that the Court identified, this is not case determinative, but instead a relevant consideration that Realtime should have analyzed before further pressing the '610 patent.

### 5.  DISH's Notice Letter to Realtime

Another red flag the district court enumerated is a letter DISH sent Realtime around the time the stay in the case was lifted. Through that letter, the DISH "defendants reiterated their position on invalidity, noted that substantial litigation expense would be incurred if the case continued, and asked plaintiff to dismiss its claims." Appx7 (citing Appx2143-2147). Specifically, DISH's letter drew Realtime's attention to the *Google* and *Netflix* decisions finding claims of the related '535 patent ineligible, specifying that "[e]ven a casual comparison of the '610 patent asserted claims to the now invalid claims of the '535 patent reveals that the '610 asserted

claims are likely to suffer the same ineligibility finding." Appx2146; *see supra* Arg. Sec.
III.B.1. DISH's letter then explained that in the time since *Google* and *Netflix* issued,
this Court had issued its *Adaptive Streaming* decision, and that "[g]iven the similarities
of the claims of the '610 patent to the claims of the *Adaptive Streaming* patent reviewed
by the Federal Circuit, there can be no objective basis for continuing to litigate claims
against Defendants that are clearly patent ineligible." Appx2146. DISH concluded,
"[i]f Realtime continues its pursuit of this litigation—despite all of the facts and legal
determinations indicating Realtime's litigation positions lack substantive merit—
***Defendants will seek costs, fees, and sanctions against Realtime*** and jointly and
severally against its counsel ***pursuant to*** Rule 11, ***35 U.S.C. § 285*** and 28 U.S.C.
§ 1927." Appx2147.

The district court's conclusion that DISH's letter constituted a red flag was
within its sound discretion. DISH's letter brought to Realtime's attention two of the
other red flags that district court correctly found: the *Google / Netflix* decisions, and
the *Adaptive Streaming* decision. *See supra* Arg. Secs. III.B.1-2. The letter, dated
February 11, 2021, provided Realtime with this notice several months before DISH's
June 2, 2021 summary judgment motion, giving Realtime ample time to reevaluate the
weaknesses in its eligibility argument and dismiss the case. Beyond avoiding the
summary judgment briefing itself, trial was scheduled for August 2021, and significant
time and resources allocated to trial preparation could have been saved had Realtime
heeded the red flag of DISH's letter.

Other opinions of this Court have held such letters relevant in the § 285
context. *See Stone Basket Innovations, LLC v. Cook Med. LLC*, 892 F.3d 1175, 1182 (Fed.

Cir. 2018) (affirming denial of attorneys' fees by distinguishing *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1385-1386 (Fed. Cir. 2017), where "the defendant [] provided notice that the patent was invalid under 35 U.S.C. §§ 101 and 102," and the Court reversed the denial of fees). DISH's letter also dispels Realtime's argument that it "*never* accepted the risk that it would be forced to pay $3.9 million in the other side's attorneys' fees." BB 18. Realtime should have been on notice that it was at all times susceptible to a finding that the case was exceptional under § 285 based purely on the statute. But to the extent it argues it was not, DISH's letter put Realtime plainly on notice that DISH would pursue § 285 fees should Realtime continue to assert the '610 patent, as it did. *See also* Appx438 (DISH operative answer requesting § 285 relief).

Finally, Realtime's argument that it responded to DISH's letter, disagreeing with DISH's eligibility assessment, does not absolve it from being cognizant of this red flag. Realtime's response simply indicated that it did not believe the ineligibility findings of the '535 patent claim 15 in the *Google* and *Netflix* decisions could bear on the '610 patent, but without explaining why. Appx2408. And Realtime's responsive letter did not address *Adaptive Streaming* at all. *See* Appx2408-2409. Nevertheless, it was "Realtime's dogged pursuit of the case notwithstanding those danger signals [that] renders this an exceptional case." Appx8. DISH's letter put Realtime on clear notice of several warning signals, and the district court did not abuse its discretion in concluding that Realtime's failure to heed them was at its own peril.

### 6. Dr. Bovik's Declaration in Support of DISH's Summary Judgment Motion

The final red flag the district court identified was the declaration DISH submitted with its summary judgment motion from its expert, Dr. Alan Bovik. *See* Appx1405-1415. As the district court noted in its exceptionality order, "Dr. Bovik's opinions merited serious consideration," and for good reason. Appx7. Dr. Bovik holds an endowed Professorship at the University of Texas, is the Director of the Laboratory for Image and Video Engineering, and has more than 30 years of experience in video compression. Appx1406-1407 ¶¶1-3; Appx2013. Dr. Bovik opined that the '610 patent is directed to an abstract idea, and the district court found compelling that in support he noted "that the '610 patent itself acknowledges that compression is a well-known concept; that the patent did not invent a new compression algorithm; and that it did not invent the concept of algorithms having parameters that can be varied to change the performance of the algorithm." Appx2013; Appx1407-1409 ¶¶5-11.

The district court also credited Dr. Bovik's commentary on the import of court's claim construction of the term "throughput of a communication channel" to mean the "number of pending transmission requests over a communication channel," which is significant, given the heavy weight Realtime places on it. Appx2013-2014. Dr. Bovik disagreed that the construction added meaningfully to the eligibility analysis, explaining that with the throughput limitation, "the patent is simply saying that the system consider[s] an additional well-known factor that is considered for choosing the best compression algorithm." Appx2013 (quoting Appx1413 ¶18).

Finally, the district court found compelling Dr. Bovik's commentary that "the '610 Patent provides no technical details as to *how* the number of pending transmission requests would be monitored." Appx2014 (quoting Appx1413 ¶18) (italicization in original). The district court concluded that this opinion "echoe[d] the finding of the *Netflix* court" and mirrored this Court's analysis in *Adaptive Streaming*. Appx2014 (citing *Netflix*, 2018 WL 6521978, at *6; *Adaptive Streaming*, 836 F. App'x at 904).[11]

Thus, Dr. Bovik's opinions crystallized many of the glaring deficiencies with Realtime's eligibility arguments, and it was well within the district court's discretion to consider it a red flag. Realtime argues that it had its own expert testimony and was not compelled to accept DISH's expert's opinion. BB 52-53. This argument fails for two reasons. First, Realtime tellingly did not provide a rebuttal expert declaration to Dr. Bovik from its own expert, Dr. Rhyne. Rather, Realtime cobbled together sections of Dr. Rhyne's expert report—served months before Dr. Bovik's declaration—and submitted them along with Realtime's opposition to DISH's summary judgment motion. *See, e.g.*, Appx1768 (Realtime summary judgment opposition citing Ex. 2); Appx1820-1821, Appx1835 (Realtime summary judgment opposition Ex. 2., excerpts of Rhyne expert report). This report did not, and could not, address head-on Dr. Bovik's declaration first served several months later.

---

[11] Realtime cherry-picks a partial response from Dr. Bovik's deposition to wrongly argue his declaration was unreliable. BB 52. Dr. Bovik was not ignoring the district court's claim constructions, but correctly explaining that he was "not a lawyer" and that he understood that "a judge can still construe a term even if . . . claims are unpatentable." Appx1846-1847 (355:23-356:10).

Second, in identifying Dr. Bovik's expert declaration as a red flag, the district court already addressed Realtime's argument that it was not compelled to accept the opinion of DISH's expert. The district court recognized "that parties to litigation typically are not persuaded by the opinions of the opposing party's retained expert." Appx7. Even still, given the force of Dr. Bovik's eligibility opinions, the district court determined that "Dr. Bovik's opinions merited serious consideration, at least as another red flag concerning the potential resolution of the invalidity issue." *Id.* This is precisely the type of discretionary determination that the district court "is better positioned" to make "because it lives with the case over a prolonged period of time." *Highmark*, 572 U.S. at 564 (2014). The district court's conclusion that Dr. Bovik's declaration constituted a red flag was not an abuse of discretion.

## IV. Realtime's Arguments Do Not Establish That Its Eligibility Position Had Objective Merit

Realtime presents a host of reasons allegedly supporting its belief that the '610 patent was eligible. These purported justifications, individually and collectively, fail to demonstrate that the district court abused its discretion.

### A. The District Court's Denial Without Prejudice of DISH's Rule 12 Eligibility Motions and Claim Construction Order Did Not Signal Realtime Had a Meritorious Case

Contrary to Realtime's argument (BB 23-26), the district court did not signal that Realtime had a meritorious case. During the hearing on DISH's Rule 12 motions, the district court noted, as a general proposition, that claim construction "potentially matters" in deciding eligibility. Appx386 (9:15-23). Because both parties proposed a claim construction hearing in the procedural schedule, the district court

believed that claim construction could be relevant for determining eligibility. Appx386-387 (9:24-10:9). Ruling from the bench, the court held that "for today's purpose," it would deny DISH's Rule 12 motions because it was "very early in the case" and it would reserve judgment until after "getting these terms defined" so it could "then see where we are." Appx391 (14:9-15); Appx4. The district court did not intend for its ruling to indicate that Realtime's case had merit.

Were there any doubt, at the same hearing, the district court made quite clear its thinking that Realtime's asserted patents (both the '610 and related '535 patents at this early stage) appeared patent ineligible. After counsel for Realtime attempted to describe what the asserted patents covered, the district court issued the following forewarning:

> [I]f all you're talking about is algorithms and applying some formula, my intuition, my gut instinct would be, well, maybe the defendants have a point. **Maybe this is just an abstract concept. This doesn't sound like something you would patent**. It doesn't sound like it's technology. **It just sounds like an idea.** You're going to have to do a better job explaining this to get your case to a jury and then to win your case. That's my advice for you for the day.

Appx386(9:6-14); *see also* Appx382-386 (5:13-9:3). The district court quoted this same portion of the transcript in its exceptionality order and characterized it as "express[ing] its concern about validity." Appx4. Just like the red flags the district court found Realtime should have heeded, this was another sign of danger that Realtime ignored.

Other cases have rejected the notion that denial of a Rule 12 motion on eligibility signals that a patentee's eligibility argument has merit. In *Inventor Holdings*,

the district court denied several early § 101 motions without opinion before ultimately granting the defendant's § 101 motion and deeming the case exceptional for the patentee's weak eligibility arguments.  876 F.3d at 1379-80.  Affirming, this Court explained that the district court's denial of Rule 12 motions without opinion was "no[t] evidence that the district court ever endorsed the patent-eligibility of the asserted claims," and that "denial of the motion to dismiss was not a decision on the merits of that motion, but was a means of postponing decision on the merits."  *Id.* at 1379 (quoting *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995)).

The inapposite case law Realtime cites does not overcome *Inventor Holdings*. Realtime first relies on the statement in *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010), that "[t]he district court's characterization of Medtronic's claims as frivolous is undermined by the fact that the court denied BrainLAB's motions for ***summary judgment***."  BB 23. This holding is plainly inapplicable because here the district court *granted* DISH's summary judgment motion.  *Medtronic* does not suggest that a non-merits-based denial of a Rule 12 motion, whose relief is later granted at the summary judgment stage, counsels against a finding of exceptionality, and *Inventor Holdings* confirms it does not.

In an unfortunate move, Realtime misleadingly modifies a quote from *Medtronic* to suggest it supports Realtime's argument.  Realtime's brief replaces, with bracketing, the stricken text in the following quotation from *Medtronic* with the underlined text to manipulate the *Medtronic* holding: "Absent misrepresentation to the court, a party is entitled to rely on a court's denial of ~~summary judgment and JMOL~~ [a motion to

dismiss] as an indication that the party's claims were objectively reasonable and suitable for resolution at trial." *See* BB 24 (misquoting *Medtronic*, 603 F.3d at 954 and *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017)). Realtime's attempt to distort *Medtronic*'s holding must not be countenanced.

Realtime's reliance on *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373 (Fed. Cir. 2020), BB 18 and 37, fares no better because that decision focused on the district court's failure to make factual findings regarding the underlying merits of the trademark claims that were the basis of its exceptionality ruling. *Id.* at 1381. *Munchkin* stands in stark contrast to this case, where the district court "live[d] with" the § 101 issue from the motion to dismiss phase through ruling on it in DISH's favor at summary judgment, and made specific factual findings regarding the red flags Realtime's eligibility argument faced. *See Highmark*, 572 U.S. at 564 ("[T]he district court is better positioned to decide whether a case is exceptional because it lives with the case over a prolonged period of time.").

Even if Realtime mistook the district court's March 2018 denial of the early-stage Rule 12 motion as a suggestion that the '610 patent was eligible, that is of no consequence for the fees award. The district court awarded fees for attorney time accrued starting in January 2021, after Realtime urged the stay be lifted. Appx6-8; Appx14, Appx23-24. This was nearly three years after the court's Rule 12 decisions and also after several red flags had developed in the intervening time. Appx5-6. Any false impression that Realtime supposedly formed regarding the eligibility of its claims based on the district court's early decision on DISH's Rule 12 motions should have dissolved by the time the stay was lifted and fees began accruing.

Realtime's second argument, that the district court's claim construction order presented an indicator of eligibility, is smoke and mirrors. Realtime never presented a developed argument for why the terms it prevailed on, "compression" and "data block," are relevant for eligibility. The most Realtime argued is that the construction of these terms is pertinent because they purportedly demonstrate that the '610 patent's claims are computer-centric, thus making the '610 patent "rooted in computer technology." Appx1755; *see also* Appx1761-1762; BB 27.

That a patent relates to computers is insufficient to render a claim eligible, which permeates the core of the *Alice* decision. *See* 573 U.S. at 221-24 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."). Claims may be eligible only where "the **claimed solution** is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). As discussed earlier, there is no particular solution claimed by the '610 patent, so the presence of several generic computer concepts in the claims is not enough to make the claims eligible. *See Two-Way Media*, 874 F.3d at 1338 (holding claims ineligible where "[a]t best, the constructions propose the use of generic computer components to carry out the recited abstract idea"); *see supra* Arg. Sec. II.A.

And despite Realtime's repeated argument that the "throughput" limitation somehow gave merit to its eligibility position, the district court adopted DISH's

proposed construction for that term ("number of pending transmission requests over a communication channel"), not Realtime's. Appx1191-1193. Nonetheless, when Realtime's expert related throughput to bandwidth, he did so *applying this very construction*. *See* Appx1958 (193:17-25). Again, selection based on bandwidth was found ineligible in *Adaptive Streaming*, so the throughput limitation, even as construed, did not demonstrate eligibility. 836 F. App'x at 902-03; *see supra* Arg. Sec. III.B.2.

Neither the district court's Rule 12 rulings nor its claim construction order supports Realtime's argument that its eligibility argument had merit.

## B. Realtime's Dispute Regarding *Alice* Step One Was Not Reasonable

The district court correctly agreed with DISH that the claims are directed to an abstract idea, namely "the selection of a data compression technique based on characteristics of the data." Appx2004, Appx2013-2014. Realtime argues that DISH and the district court oversimplified the '610 patent in their Step One analysis. BB 28-31. They did not, which has been confirmed by this Court's affirmance in the merits appeal. And although Realtime's argument is meant to show that its alternative position was reasonable, Realtime expressly refuses to articulate its *Alice* Step-One "directed to" position, so that its reasonableness can be assessed. BB 31. That alone dooms Realtime's argument.

In any event, oversimplification is not an issue for a high-level, functionally claimed patent like the '610 patent. Oversimplification becomes a concern where the recitation of the abstract idea is at "such a high level of abstraction" that it is

"untethered from the language of the claims." *Enfish*, 822 F.3d at 1337. Here, the abstract idea closely tracks the precise claim language. The '610 patent's claims are directed to selecting an algorithm based on characteristics. They do not specify any of the parameters to be used in this selection. Nor do they specify what algorithm to select, let alone how to select it. And the things Realtime says are absent from the district court's conception of the abstract idea—i.e., selecting from among at least one asymmetric algorithm and consideration of the throughput of the communication channel—do not confer eligibility. *See supra* Arg. Sec. II.A.

Realtime also takes issue with the suitcase analogy DISH presented in its summary judgment briefing as oversimplifying the claims. BB 28-29. Not so. Rather, DISH was following through on an analogy the district court proposed during the Rule 12 hearing. *See* Appx384 (7:7-15) (asking how compression relates to filling a suitcase). DISH simply endeavored to provide a manner of analogizing the claims to the suitcase scenario the district court had presented.

### C. Realtime's Misapplication of Other Cases Was Not Reasonable

Realtime's resort to other court decisions does not support the legitimacy of its failed '610 patent eligibility argument. First, Realtime overstates the *Google* court's conclusion as to the '477 and '046 patents. BB 31-33. The *Google* court merely concluded that, at the early Rule 12(b)(6) motion to dismiss stage, it could not determine whether the presence of structural claim elements, such as "compression encoders," would bear on eligibility. Appx2398-2399. That ruling is unremarkable and the district court here did the same thing, denying DISH's Rule 12 motions on eligibility so it could conduct claim construction before ultimately granting summary

judgment of ineligibility. Appx391 (14:9-15); *see supra* Arg. Sec. IV.A. This preliminary ruling did not justify Realtime's continued assertion of the '610 patent despite the many existing red flags.

Realtime also stretches the holding in *Realtime Data LLC v. Reduxio Sys., Inc.*, 831 F. App'x 492 (Fed. Cir. 2020). BB 33-35. In *Reduxio*, the Court remanded the case because the district court's oral order finding the patents-at-issue ineligible was inadequate for review purposes. *Id.* at 496. Thus, the Court did not reach the merits of eligibility, noting that "[n]othing in this opinion should be read as opining on the relative merits of the parties' arguments or the proper resolution of the case." *Id.* at 499. On remand, the district court again found the claims ineligible in a written decision now on appeal, which was argued in February 2023. *See Realtime Data LLC v. Array Networks Inc.*, 556 F. Supp. 3d 424, 437 (D. Del. 2021), *appealed in* No. 21-2251 (Fed. Cir. 2021).

Realtime's argument that other of this Court's cases informed its thinking on the '610 patent's eligibility is due little credence. BB 33, 35. Of the six cases Realtime highlights, four were never cited in Realtime's summary judgment briefing. If these cases were so significant, and actually informed Realtime's thinking, why did Realtime leave them out?[12] Of the two cases it did cite, *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278

---

[12] It is no surprise that Realtime did not cite these cases in its briefing, as each involved patents claiming a highly specific and technical solution to a uniquely technical problem, unlike the '610 patent. *See Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020) (claiming "'parser subsystem' which "extracts information from the packet" that "is checked against 'flow-entry memory' by the claimed "lookup engine" and using "flow insertion engine" to determine "whether the

(Fed. Cir. 2020), was presented just once in passing, with no context or description of why the case was relevant. Appx1764. The remaining case—*Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017)—is inapplicable because, unlike the '610 patent, it involved claims covering a targeted and specific application of computers to solve a technical problem. *See id.* at 1259-60 (describing claims' "use of programmable operational characteristics that are configurable based on the type of processor").

Thus, Realtime had no legitimate basis to believe its eligibility arguments for the '610 patent had merit in view of this Court's cases, especially considering the red flags the district court identified.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court's exceptional case finding and fees award.

---

packet matches an entry in the flow-entry database" and updating the database accordingly); *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1308 (Fed. Cir. 2020) (claiming in ad hoc "piconet" networks the specific addition "to each inquiry message prior to transmission [of] an additional data field for polling at least one secondary station"); *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1145 (Fed. Cir. 2019) (claiming "an improved check data generating device that enables a data transmission error detection system to detect a specific type of error"); *SRI Int'l, Inc. v. Cisco Sys.*, Inc., 930 F.3d 1295, 1303 (Fed. Cir. 2019) (claiming use of "network monitors to detect suspicious network activity based on analysis of network traffic data, generating reports of that suspicious activity, and integrating those reports using hierarchical monitors").

Dated:  May 31, 2023

Respectfully submitted,

*/s/ Ruffin B. Cordell*
Ruffin B. Cordell
Adam R. Shartzer
Brian J. Livedalen
Michael J. Ballanco
Fish & Richardson P.C.
1000 Maine Ave. SW, Suite 1000
Washington, DC 20024
(202) 783-5070
cordell@fr.com

*Attorneys for Sling TV L.L.C.,*
*Sling Media L.L.C.,*
*DISH Network L.L.C.,*
*DISH Technologies L.L.C.*

## CERTIFICATE OF SERVICE AND FILING

I certify that on May 31, 2023, I electronically filed the foregoing document of appellee using the Court's CM/ECF filing system. Counsel for appellant were electronically served by and through the Court's CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(e).

*/s/ Ruffin B. Cordell*
Ruffin B. Cordell

## CERTIFICATE OF COMPLIANCE

The Responsive Brief of appellee is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b).  The Brief contains 13,842 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). This Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Garamond, 14 Point.


Dated:  May 31, 2023                    */s/ Ruffin B. Cordell*
                                        Ruffin B. Cordell